**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

CLAUDIA SAMPEDRO, ALANA MARIE SOUZA a/k/a ALANA CAMPOS, JESSICA HINTON a/k/a JESSA HINTON, JESSICA BURCIAGA, BRENDA GEIGER, IESHA MARIE CRESPO, JESSICA NICHOLE ROCKWELL, KATARINA VAN DERHAM and SARA UNDERWOOD,

Plaintiffs,

- against -

LOS ALTOS TAQUERIA, LLC d/b/a LOS ALTOS TAQUERIA,

Defendant.

Case No. 2:26-cv-04993-BHH

**COMPLAINT**
**(Jury Trial Demanded)**

Plaintiffs CLAUDIA SAMPEDRO, ALANA MARIE SOUZA a/k/a ALANA CAMPOS, JESSICA HINTON a/k/a JESSA HINTON, JESSICA BURCIAGA, BRENDA GEIGER, IESHA MARIE CRESPO, JESSICA NICHOLE ROCKWELL, KATARINA VAN DERHAM and SARA UNDERWOOD, (collectively, "Plaintiffs"), file this Complaint against LOS ALTOS TAQUERIA, LLC, d/b/a LOS ALTOS TAQUERIA ("Defendant") respectfully allege as follows:

## BACKGROUND

1. This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their restaurant, LOS ALTOS TAQUERIA located at 1316 Red Bank Rd, Unit 5 & 6, Goose Creek, South Carolina 29445 (hereinafter referred to as the "Restaurant" or "Altos").

2. As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Common Law Right of Publicity

– Misappropriation of Likeness; d) Violation of South Carolina's Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, et seq.; e) Defamation; f) Negligence and Respondeat Superior; g) Conversion; h) Unjust Enrichment; and i) Quantum Meruit.

3. In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

**JURISDICTION & VENUE**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5. This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6. Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7. According to publicly available records, Defendant LOS ALTOS TAQUERIA, LLC, is a limited liability company formed under the laws of the state of South Carolina, with its principal place of business located at 1316 Red Bank Rd, Unit 5 &6, Goose Creek, South Carolina, 29445. Upon information and belief, LOS ALTOS TAQUERIA, LLC operates LOS ALTOS TAQUERIA, which is located at 1316 Red Bank Rd, Unit 5 &6, Goose Creek, South Carolina 29445.

8. Venue is proper in the United States District Court for the District of South Carolina because Defendant's principal place of business is located in Goose Creek, South Carolina, Berkeley County.

9. A significant portion of the alleged causes of action arose and accrued in Goose Creek, South Carolina and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Goose Creek, South Carolina.

## PARTIES

***Plaintiffs***

10. Plaintiff CLAUDIA SAMPEDRO ("SAMPEDRO") is a well-known professional model, and a resident of Miami-Dade County, Florida.

11. Plaintiff ALANA MARIE SOUZA a/k/a ALANA CAMPOS ("CAMPOS") is a well-known professional model, and a resident of Los Angeles County, California.

12. Plaintiff JESSICA HINTON a/k/a JESSA HINTON ("HINTON") is a well-known professional model, and a resident of Los Angeles County, California.

13. Plaintiff JESSICA BURCIAGA ("BURCIAGA") is a well-known professional model, and a resident of Fulton County, Georgia.

14. Plaintiff BRENDA GEIGER ("GEIGER") is a well-known professional model, and a resident of Onondaga County, New York.

15. Plaintiff IESHA MARIE CRESPO ("CRESPO") is a well-known professional model, and a resident of Miami-Dade County, Florida.

16. Plaintiff JESSICA NICHOLE ROCKWELL ("ROCKWELL") is a well-known professional model, and a resident of Los Angeles County, California.

17. Plaintiff KATARINA VAN DERHAM ("DERHAM") is a well-known professional model, and a resident of Los Angeles County, California.

18. Plaintiff SARA UNDERWOOD ("UNDERWOOD") is a well-known professional model, and a resident of Jefferson County, Washington.

***Defendant***

19. Defendant, LOS ALTOS TAQUERIA, LLC d/b/a LOS ALTOS TAQUERIA d/b/a ALTOS, is a limited liability company formed under the laws of the state of South Carolina and registered to conduct business in South Carolina. During times relevant to this action, LOS ALTOS TAQUERIA, LLC operated LOS ALTOS TAQUERIA.

20. Service of process may be perfected upon Defendant LOS ALTOS TAQUERIA, LLC d/b/a LOS ALTOS TAQUERIA by serving the registered agent for service of process,

Armando Navarro, who can be located at 820 Bowman Rd, Mt Pleasant, SC 29464.

## FACTUAL ALLEGATIONS

21. Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

22. Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

23. Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

24. In the case of each Plaintiff, this apparent claim was false.

25. Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

26. No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

27. Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

28. SAMPEDRO is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at age 16, was discovered by Elite models. Sampedro has appeared in many catalogues, and magazine editorials. She has a number of cover credits for

magazines such as Nine 5 Four, Shock, Face to Face and Mixed. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro has three children and is married to former Green Bay's star defensive end Julius Peppers. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined 150,000 fans on Facebook and X (formerly known as Twitter).[1]

29. That we know of, SAMPEDRO is depicted in the photos in Exhibit "A" to promote Altos on related social media accounts. These Images were intentionally altered to make it appear that Sampedro was either an employee working at Altos, that she endorsed Altos, or that she was otherwise associated or affiliated with Altos.

30. SAMPEDRO has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

31. CAMPOS is a Brazilian model who started working at the age of 15. Campos was scouted by the director of Ford Models, which remained her agency for five years. While she was nominated in numerous beauty pageants in her country, she decided to move to the United States at 20 and is currently represented by Wilhelmina Models. Campos has been published in Playboy, Astonish, Viva Glam, and Bliss magazines. She has also been in many campaigns such as Arden B, Target, Chynna Dolls, Frederick's of Hollywood, I Collection, Elegant Moments, Drift Eyewear, Sexy Dresses, Sachika, Marisa Kenson, Sports Calendar, and appeared as a spokes model for My Body Journey and as a cover girl for Arizona Foothills Magazine. In addition, Campos was featured in the movie "Last Vegas" with Robert DeNiro, Morgan Freeman, and Michael Douglas.

32. That we know of, CAMPOS is depicted in the photo in Exhibit "B" to promote

---

[1]In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

Altos on related social media accounts. This Image was intentionally altered to make it appear that CAMPOS was either an employee working at Altos, that she endorsed Altos, or that she was otherwise associated or affiliated with Altos.

33. CAMPOS has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

34. HINTON was discovered by a talent manager at a wedding at age 14. By age 16 she locked in three national TV commercials and made guest appearances on Baywatch and 7th Heaven. Hinton expanded her portfolio to include runway modeling and print campaigns at 18. In 2010, Hinton was the face of the Palms Hotel & Casino's ad campaign. She then pursued TV personality roles hosting for Victory Poker, and Top Rank Boxing interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as July's Playmate of the Month becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises. Hinton also attained spokesmodel roles for Affliction Clothing, Enzo, Milano Hair Products, REVIV Wellness Spa, and Protein World. She has ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue, and Roma Costume, in addition to hosting a Los Angeles, CA television station KTLA. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for magazines such as FHM, Kandy, MMA Sports, Guitar World, and Muscle & Fitness. She was named Creative Director for MAJR Media and was given part ownership for her role with the company. Hinton has successfully accomplished elite status as a social media celebrity with a combined total of over 3.8 million followers on Facebook, Instagram and X (formerly known as Twitter).

35. That we know of, HINTON is depicted in the photo in Exhibit "C" to promote Altos on related social media accounts. This Image was intentionally altered to make it appear that Hinton was either an employee working at Altos, that she endorsed Altos, or that she was otherwise

associated or affiliated with Altos.

36. HINTON has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

37. BURCIAGA is a model and a business owner. She is of Mexican, French, and Irish descent. Burciaga began modeling in 2005 when she submitted a few photos to Stuff Magazine. The magazine responded by flying her out to New York for a photo shoot. After Burciaga's first photo shoot, she won Stuff Magazine's, "Neighborhood Knockout," contest. The prize was $5,000, a 4-page spread in the magazine, and an appearance as a ring girl in EA Sports Fight Night Round 3 video game. Burciaga's popularity rose quickly and she began appearing in various magazines including Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine, and many others. Burciaga was the Playboy Playmate of the Month for February 2009 and has appeared as herself in several episodes of the reality TV series The Girls Next Door. She has various business ventures, including a women's online clothing boutique, www.SailorandSaint.com. Burciaga's social media reach has surpassed 1.4 million followers on Instagram, over 3.2 million Facebook followers, and over 165,500 followers on X (formerly known as Twitter).

38. That we know of, BURCIAGA is depicted in the photos in Exhibit "D" to promote Altos on its Facebook page and other related social media accounts. These Images were intentionally altered to make it appear that Burciaga was either an employee working at Altos, that she endorsed Altos, or that she was otherwise associated or affiliated with Altos.

39. BURCIAGA has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

40. GEIGER is a professional model and actress who performed with eight-time

Grammy nominee rapper Lil Wayne in a music video for two-time Grammy nominee singer Keri Hilson. She is most known for her work in Glamour Magazine and her appearance on "The Howard Stern Show" in a "Miss HTV March" contest. Geiger has appeared in numerous magazines such as Show, Maxim and Raw, and has modeled for several product campaigns such as Primitive Clothing, where she currently has her own line of custom skateboard decks.

41. That we know of, GEIGER is depicted in the photos in Exhibit "E" to promote Altos on related social media accounts. These Images were intentionally altered to make it appear that Geiger was either an employee working at Altos, that she endorsed Altos, or that she was otherwise associated or affiliated with Altos.

42. GEIGER has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

43. CRESPO is an American model and video star with combined social media following of nearly a million. Crespo has been featured in a number of magazines and has the covers of Models Latina March 2015 and Shock magazine. Crespo has also appeared in several catalogues such as Raw and Uncut and appeared in a dozen music videos for artists such as Rick Ross and French Montana.

44. That we know of, CRESPO is depicted in the photos in Exhibit "F" to promote Altos on related social media accounts. These Images were intentionally altered to make it appear that Crespo was either an employee working at Altos, that she endorsed Altos, or that she was otherwise associated or affiliated with Altos.

45. CRESPO has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

46. ROCKWELL is a model and actress. She is well known for Angry Video Game

Nerd: The Movie (2014), Immigrants (2009), and A Que No Puedes! (2007). She has also appeared on films and tv shows such as, Sons of Anarchy, Entourage, Knight Rider, Heroes and she has done music videos for Nickelback and Baby Bash. Rockwell has done prints as a catalog Model for Dreamgirl Lingerie, No Fear Calendar, and Shift Clothing. Rockwell's modeled for Hooter's Magazine and Calendar, Extreme RC Car Magazine, and Racer X Magazine among others.

47. That we know of, ROCKWELL is depicted in the photos in Exhibit "G" to promote Altos on related social media accounts. These Images were intentionally altered to make it appear that Rockwell was either an employee working at Altos, that she endorsed Altos, or that she was otherwise associated or affiliated with Altos.

48. ROCKWELL has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

49. VAN DERHAM is a successful model, actress, philanthropist, and entrepreneur. As a model, Van Derham graced over 60 magazine covers and appeared in over 600 media outlets including the Time Square jumbotron, CNN, FOX, and NBC. She appeared in 17 national and international print and TV commercials and has been voted one of the 100 sexiest women in the world by magazines on 3 different continents. Van Derham made history by being the only St. Pauli Girl spokesmodel who got re-elected. This has not been repeated since. As an actress, she played opposite Bob Saget in the TV show, Entourage and plays one of the lead roles in the upcoming movie, "Unbelievable" alongside Nichelle Nichols, Tim Russ, and Gilbert Gottfried. Currently, Van Derham is working on the movie, "Vendetta Vette". She is also a founder, CEO, and Editor-in-Chief of classic, glamour lifestyle magazine, VIVA GLAM. Her well-respected status gets her invited as a judge of model contests and beauty pageants around the globe. She has over 210 thousand Instagram followers, over 11 thousand Twitter followers, and over 190 thousand Facebook followers.

50. That we know of, VAN DERHAM is depicted in the photos in Exhibit "H" to

promote Altos on related social media accounts. These Images were intentionally altered to make it appear that VAN DERHAM was either an employee working at Altos, that she endorsed Altos, or that she was otherwise associated or affiliated with Altos.

51. VAN DERHAM has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

52. UNDERWOOD first appeared in Playboy in the pictorial "The Girls of the Pac 10" in the October 2005 issue, in which she also graced the cover. She was the Playmate of the Month in the July 2006 issue of the famous men's magazine and was named Playmate of the Year in 2007. Underwood has been featured in many Playboy videos and has appeared as herself in the films The House Bunny (2008) and Miss March (2009), as well as in episodes of reality TV series such as Kendra (2009), The Girls Next Door (2005), and Bridget's Sexiest Beaches (2009). She has also worked on television as a continuity announcer for the Blackbelt TV cable network and co-hosted hundreds of episodes of G4's Attack of the Show. She is the co-owner of Sugar Taco and has her YouTube channel, Cabinland, with 1.05 million subscribers. Underwood also has 8.6 million followers on Instagram, 1.4 million followers on TikTok, and 1.3 million followers on X (formerly known as Twitter).

53. That we know of, UNDERWOOD is depicted in the photos in Exhibit "I" to promote Altos on its Facebook page, Instagram account and other related social media accounts. These Images were intentionally altered to make it appear that Underwood was either an employee working at Altos, that she endorsed Altos, or that she was otherwise associated or affiliated with Altos.

54. UNDERWOOD has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activity and Misappropriation***

55. Defendant operates (or operated, during the relevant time period,) a Restaurant, where it is (or was) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

56. Defendant owns, operates, and controls Altos' social media accounts, including its Facebook, Twitter, and Instagram accounts.

57. Defendant used Altos' Facebook, Twitter, and Instagram accounts to promote Altos', and to attract patrons.

58. Defendant did this for its own commercial and financial benefit.

59. Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Altos, endorsed Altos, or was otherwise associated or affiliated with Altos.

60. Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Altos to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

61. Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by Altos, and at no point have any of the Plaintiffs ever endorsed Altos or otherwise been affiliated or associated with Altos.

62. All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs

63. Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

64. Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

65. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

66. The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as “usage”; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the “term.”

67. Most licenses to use a model’s image are for one, two or three year terms; but almost never is there a “lifetime” term.

***Defendant’s Misappropriation of Plaintiffs’ Images***

68. Defendant was aware that, by using Plaintiffs’ Images, they were violating Plaintiffs’ right to privacy, Plaintiffs’ right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Altos.

69. Unauthorized use of Plaintiffs’ Images deprives them of income they are owed relating to the commercialization of their Images.

70. In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Altos.

71. At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs’ Images.

72. No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs’ Images.

73. No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Altos’ website, Twitter, Facebook, or Instagram accounts.

74. Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

75. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

76. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein

77. Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendant's establishment, or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendant.

78. Thus, this was done in furtherance of Defendant's commercial benefit.

79. Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendant's customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

80. Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

81. As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

82. Defendant's use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

83. Despite the fact that Defendant was at all times aware that Plaintiffs neither worked at, nor endorsed its establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendant 'sestablishment.

84. Defendant knew that their use of P Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's establishment.

85. Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

86. As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

87. Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling,

resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

88. Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

89. WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

90. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

91. Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendant and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

92. Defendant used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use their image in order to advertise, promote, and market Defendant's businesses, Defendant's establishment, and/or Defendant's establishment events and activities.

93. Defendant's use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendant's businesses, Defendant's establishment, and/or Defendant's events and activities as described in this Complaint was false and misleading.

94. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

95. Defendant's false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant's establishment, as to the general quality of attendees and participants of Defendant's establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant establishment events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities.

96. Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, or Defendant establishment events and activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant's establishment, visit Defendant's establishment, and participate in events at Defendant's establishment and had a material effect and impact on the decision of members and prospective

members and participants to join Defendant's establishment, visit Defendant's establishment and take part in the events at Defendant's establishment.

97. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's establishment and their activities and attracting clientele to Defendant's establishment.

98. Defendant knew or should have known that their unauthorized use of Plaintiff's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

99. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

100. Defendant's wrongful conduct as described herein was willful.

101. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

102. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

103. The method and manner in which Defendant used the image of Plaintiffs further evinces that Defendant was aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their image to advertise Defendant's businesses.

104. Defendant has caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendant's establishment.

105. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
**(Common Law Right of Publicity – Misappropriation of Likeness)**

106. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

107. Defendant has appropriated each Plaintiff's likeness for Defendant's commercial purposes without authority or consent from Plaintiffs.

108. Defendant misappropriated Plaintiffs' likenesses by publishing their image and likeness on Defendant's website or related social media accounts as part of Defendant's advertising campaign.

109. Defendant's website and social media accounts were designed to advertise and attract business to Defendant and generate revenue for Defendant.

110. Plaintiffs are informed and believe and hereon allege that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

111. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

112. Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

113. Upon information and belief, Defendant's use of Plaintiffs' image and likeness did in fact attract clientele and generate business for Defendant.

114. At no point did any Defendant ever seek or receive permission or consent to use any Plaintiffs image and likeness for any purpose.

115. Defendant was at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their image and likeness in any medium for any purpose.

116. At no point did Defendant ever compensate Plaintiffs for its unauthorized use of their image and likeness.

117. Plaintiffs have been damaged in amounts to be proved at trial.

**FOURTH CAUSE OF ACTION**
**(Violation of South Carolina's Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.*)**

118. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

119. Defendant operated Defendant website and social media accounts in order to promote Defendant, to attract clientele thereto, and to thereby generate revenue for Defendant.

120. As such, Defendant's operation of the website and social media accounts, and their publication of image and likeness thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of South Carolina.

121. Defendant published Plaintiffs' image and likeness on Defendant website and social media accounts to create the false impression that Plaintiffs were either strippers working at Defendant, endorsed Defendant, or were otherwise affiliated, associated, or connected with Defendant.

122. As such, Defendant's intent in publishing Plaintiffs' image and likeness was to mislead the public as to Plaintiffs' employment at and/or affiliation with Defendant.

123. Defendant thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of South Carolina.

124. Defendant advertising practices offends the public policy of South Carolina insofar as it constitutes misappropriation of Plaintiffs' property rights in their own image and likeness, and invasion of Plaintiffs' privacy, for Defendant commercial benefit.

125. Defendant advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendant.

126. Defendant advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendant.

127. There are no benefits to Defendant advertising practices as set forth hereon except a benefit to Defendant own commercial interests.

128. As a result of Defendant's unauthorized and misleading publication of Plaintiffs' image and likeness on their Defendant website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

129. As a result of Defendant's unauthorized and misleading use of Plaintiffs' image and likeness, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## FIFTH CAUSE OF ACTION
**(Defamation)**

130. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

131. As detailed throughout this Complaint, Defendant have published altered image and likeness of Plaintiffs in order to promote their Defendant to the general public and potential clientele.

132. Defendant's publication of said image and likeness constitutes a representation that Plaintiffs was either employed by Defendant, that they endorsed Defendant, or that they had some affiliation with Defendant.

133. None of these representations were true.

134. In publishing Plaintiffs' altered image and likeness, it was Defendant's intention to create a false impression to the general public that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendant.

135. Defendant was at least negligent in publishing Plaintiffs' image and likeness

because they knew, or should have known, that Plaintiffs were not employed by Defendant, had no affiliation with Defendant, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

136. In the alternative, Defendant published the image and likeness of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by Defendant, had no affiliation with Defendant, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

137. Despite Defendant's knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' image and likeness to attract clientele and generate revenue for themselves.

138. Defendant's publication of Plaintiffs' image and likeness constitutes defamation under South Carolina law because said publication falsely accuses Plaintiffs of having acted in a manner – i.e., worked for, endorsed, or was otherwise affiliated with Defendant's establishment which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

139. Defendant's publication of Plaintiffs' image and likeness likewise constitutes defamation per se under South Carolina law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

140. This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was working for or endorsing the business, an inference which Defendant's publication of the image and likeness support.

141. Defendant's publication of Plaintiffs' image and likeness likewise constitutes defamation per se under South Carolina law because, insofar as said publication falsely portrays each of the Plaintiffs Defendant's employee, it imputes unchastity to her.

142. Defendant's publication of Plaintiffs' image and likeness caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**SIXTH CAUSE OF ACTION**
**(Negligence and Respondeat Superior)**

143. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

144. Plaintiffs are further informed and believe and hereon allege that Defendant maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

145. Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

146. Defendant owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

147. Defendant further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

148. Defendant breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

149. Defendant further failed to enforce or implement the above-stated policies and/or

to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and South Carolina law, were not violated. Defendant breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

150. Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their image and likeness were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

151. As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**(Conversion)**

152. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

153. Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their image and likeness, and have property interests thereon.

154. By the conduct detailed above, Defendant converted Plaintiffs' property rights in their image and likeness for their own use and financial gain image and likeness for its own use and financial gain.

155. As a result of Defendant's unlawful conversion of Plaintiffs' image and likeness, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**(Unjust Enrichment)**

156. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

157. As set forth in detail above, Defendant published Plaintiffs' image and likeness in order to promote Defendant to the general public and potential clientele.

158. Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendant.

159. Defendant's purpose in publishing Plaintiffs' image and likeness was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

160. Upon information and belief, Defendant did in fact benefit commercially due to their unauthorized use of Plaintiffs' image and likeness.

161. Defendant has been enriched by their unauthorized control over, and publication of, Plaintiffs' image and likeness because said publication has assisted Defendant in attracting clientele to their business.

162. Plaintiffs have not been compensated for Defendant's commercial exploitation of their image and likeness, and thus any financial benefit which Defendant received due to said exploitation is unjust.

163. As such, Plaintiffs have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
**(Quantum Meruit)**

164. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

165. Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

166. Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

167. Although Defendant has availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their establishment, work for and/or endorse the establishment, or are otherwise affiliated with their establishment, Defendant has not compensated Plaintiffs.

168. Plaintiffs are therefore entitled to reasonable compensation for Defendant's unauthorized use of their image and likeness.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Altos' Restaurant;

(c) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(e) For such other and further relief as the Court may deem just and proper.

Dated: October 21, 2026.
Mount Pleasant, SC

s/ Joshua E. Slavin
Joshua E. Slavin
The Law Offices of Joshua E. Slavin
PO Box 762
Mount Pleasant, SC 29465
P: 843-619-7338
F: 888-246-8914
josh@attorneycarolina.com
Fed. Bar No. 12602

John V. Golaszewski*
New York Bar No. 4121091
*Pro Hac Vice Application Forthcoming*
**THE CASAS LAW FIRM, P.C.**
**Talent Rights Law ®**
1325 Avenue of the Americas, 28th Floor
New York, NY 10019
P: 855-267-4457
F: 855-220-9626
john@casaslawfirm.com

Attorneys for Plaintiffs